SEVERA KEITH (SBN 218167)
LAW OFFICES OF SEVERA KEITH
179 11th Street, Second Floor
San Francisco, CA 94103
(415) 626-6000 - Telephone
(415) 865-0376 - Facsimile

Attorney for Defendant
LATASHA RINGO

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>vs.<br><br>LATASHA RINGO<br><br>Defendant. | No. CR 12-00816 PJH<br><br>**DEFENDANT LATASHA RINGO'S SENTENCING MEMORANDUM**<br><br>Date: November 20, 2013<br>Time: 2:30 p.m.<br>Ct: The Honorable Phyllis J. Hamilton |

**DEFENDANT'S SENTENCING MEMORANDUM**

Defendant Latasha Ringo submits the following memorandum in support of her request for a sentence of three years of probation. This sentence is "sufficient, but not greater than necessary to achieve the purposes of sentencing that are set forth in 18 U.S.C section 3553(a).

Ms. Ringo has come far in her life, but at the time of this offense, had not come far enough to cope with the financial duress of losing her job due to caring for five children. The

seriousness of this offense is substantially mitigated by the emotional distress that Ms. Ringo felt at the time of this offense because she could not provide for her children, the untreated mental health conditions that she suffers due to neglect and abuse as a child, her post-offense rehabilitation and employment, and her sincere remorse, demonstrated by her quick acceptance of responsibility and restitution obligations.

There is no reason to further punish Ms. Ringo with incarceration, given that she has gained employment and dedicated herself to the mental health counseling provided by pretrial services, both of which have stabilized her life and will deter recidivism. Furthermore, incarceration of Ms. Ringo will have devastating social effects on her three minor daughters, as they will likely go into foster care, because no family members can take them in, and they will face future homelessness, as Ms. Ringo will likely lose her housing subsidy.

## I. PLEA AND ADVISORY GUIDELINE RANGE

Ms. Ringo pled guilty to a violation of conspiracy to file a false claim, 18 U.S.C section 286, on April 17, 2013. The parties reached a plea agreement in this case under Federal Rules of Criminal Procedure 11(c)(1)(A) and 11(c)(1)(B). Ms. Ringo agrees with the computation of both the total offense level of 8 and the criminal history category of III, as set forth in the Presentence Investigation Report, Filed November 6, 2013 ("PSR").

According to the 2012 Guidelines Manual, the imprisonment range for this offense is 6 to 12 months, and falls into Zone B of the sentencing table. PSR at ¶ 82. The guidelines authorize a sentence of probation, instead of imprisonment, for Zone B offenses provided that "the court imposes a condition or combination of conditions requiring intermittent confinement, community confinement, or home detention . . . ." USSG § 5B1.1(a)(2).

## II. FACTUAL BACKGROUND

### A. Personal History

Latasha Ringo is a strong woman, who has excelled in many, many ways despite a nightmarish childhood full of extreme neglect, abuse, and poverty. As indicated in the PSR, she witnessed her mother being forced into drug addiction and prostitution by her abusive father. PSR at ¶ 55. She was the eldest of 5 siblings, and was often responsible for their care. She and her siblings often went hungry, panhandled with their parents, and did not have their basic needs met. PSR at ¶ 56. She was also the victim of childhood sexual abuse by her aunt's boyfriend. Government intervention also failed her, as she was placed in neglectful and abusive foster care settings, where she was beaten and sexually abused. PSR at ¶¶ 56-58.

The one source of stability for Ms. Ringo as a child was school. "I coped with the traumas of my childhood with school. It was my place of peace. I would love being at school because home was so chaotic. I had friends. I had teachers who really cared, who I could talk to, and who helped me out."[1] She always attended, and had many good role models in her teachers, whom she felt looked out for her. She would often confide in her teachers about what was going on at home, and they would try to help her, by letting her into sporting events for free or letting her work school bake sales to make some pocket money.

Ms. Ringo's resilience and personal motivations led her to graduate from high school (PSR at ¶ 2), obtain a dental assistant certificate, and advance in her career. PSR at ¶ 70-75. She has been at her current job for approximately 17 months, and has recently been promoted to lead

[1] Ms. Ringo reported this in her written responses for the probation interview.

dental assistant. She is enrolled in Spanish classes, as her dental patients are primarily Spanish-speaking school children, and this will enable her to do her job even better. PSR at ¶ 70-71.

Ms. Ringo is also an excellent mother to her three children: her daughter and her sister's two daughters, whom she has raised for several years, because of her sister's frequent incarceration. All three girls are doing well in school, and the two oldest play on school and community basketball teams. The youngest needs extra help in school, and Ms. Ringo always gives her additional support at home with her reading and homework. It is important to Ms. Ringo to keep her children engaged in school and positive activities.

Ms. Ringo maintains friendly and positive relationships with her immediate and extended family, rather than abandoning those relationships due to her family members' dysfunctions. She stays in touch with her father and siblings as much as possible. She sees or talks on the phone to her aunts and uncles with some frequency. She feels lucky to have provided a home to her mother during the last eight years of her life, during which time she suffered from lung cancer and AIDS. PSR at ¶ 53.

Currently, Ms. Ringo works full-time and makes only $1800.00 per month, which calculates to roughly $450.00 per week to support herself and her three children. Her annual earnings are approximately $21,600.00. The Department of Health and Human Services Poverty Guidelines for 2013, establishes a figure of $23,550.00 for a family of four.[2]

B. Offense History

At the time of this offense, her family had even fewer financial resources than it does now. Her cousin suffered a mental breakdown, and Latasha took her cousin's two children into

[2] Table found at <http://aspe.hhs.gov/poverty/13poverty.cfm#thresholds>

her care, because no one else in the family would. With five children to take to and from school, doctor appointments, and other obligations, Ms. Ringo tried to continue her employment, but could not, due to frequently tardiness and absences. PSR at ¶ 17. Additionally, the youngest child, who was five at the time, would regularly urinate and defecate on herself, which required additional care and attention.

After she left her job, Ms. Ringo got a small amount of unemployment, welfare through CalWorks, food stamps, and eventually got some aid for her cousin's children. PSR at ¶ 76.

Because Ms. Ringo was emotionally and financially strained to the breaking point, she made the choice that brings her before this Court. She committed a criminal act to get, in her words, "fast and easy money." PSR at ¶ 17. She passed false W-2s so that four individuals could file false returns, and she assisted with collecting a false claim made on behalf of her incarcerated brother. PSR at ¶¶ 7-10.

At the time of that she committed the instant offense, Ms. Ringo had been previously convicted of three theft-related crimes (felony shoplifting, misdemeanor false check, and misdemeanor fraud to obtain aid), of two driving under the influence of alcohol crimes, and for driving with a suspended license. All of these convictions occurred in 2002 or earlier, except for the 2009 driving on a suspended license. Ms. Ringo does not currently drive, and she is making monthly payments so that she can complete the multiple-offender program and get her license back. PSR at ¶ 68. She was on probation for that conviction when she committed this offense.

## III. A SENTENCE OF PROBATION WOULD BEST SATISFY THE GOALS OF 18 U.S.C. SECTION 3553(a)

The Sentencing Act, which, as mandated by *United States v. Booker*, 543 U.S. 220 (2005), now guides federal judges in their selection of a sentence, and directs the courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in Paragraph (2). . ."

(2) the need for the sentence imposed -

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." *See* 18 U.S.C. § 3553(a)(2).

Section 3553(a) further directs sentencing courts to consider (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (3) the kinds of sentences available; (4) the kinds of sentences and the sentencing range established for the offense under the Guidelines; (5) any pertinent policy statements issued by the Sentencing Commission; (6) the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. Thus, the Guidelines range for the offense is but one of ten factors specified under the Sentencing Act.

In this case, the Guidelines range for this offense is six to twelve months in custody, which can be satisfied through a grant of probation, as indicated in the U.S. Probation Officer's Sentencing Recommendation. PSR at pp. 21-24.

The factors set forth below support both the Sentencing Recommendation of Probation and a variance from the guidelines, should the Court find one necessary, inasmuch as straight probation (without a period of community confinement) is below the recommended guideline for Zone B offenses, or if the Court calculates either an offense level or criminal history category that is higher than what has been agreed upon by the parties.

In accordance with *Booker* and with the directives of 18 U.S.C. § 3553(a), Ms. Ringo submits the following concerning the Court's consideration of the required factors in imposing a sentence.

A. The nature and circumstances of the offense and the history and characteristics of the defendant. § 3553(a)(1)

Section 3553(a)(1) is a "broad command to consider 'the nature and circumstances of the offense and the history and characteristics of the defendant.'" *Gall v. U.S.*, 552 U.S. 38, 49 n.6 (2007). The *Gall* Court considered the defendant's rehabilitation, family connections, lack of further criminal activity, and efforts to better himself when affirming a sentence of probation, which was a variance from the indicated guidelines sentence of at least 30 months. There, the lower court found that "'imprisonment would be counter effective by depriving society of the contributions of the Defendant, who, the Court has found, understands the consequences of his criminal conduct and is doing everything in his power to forge a new life.'" *Id.* at 44.

Further, the Supreme Court recognizes that, while imprisonment is more severe than probation, "[o]ffenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty." *Id.* at 48. Probation is no walk in the park, and here, it is the

most reasonable sentence, given Ms. Ringo's personal circumstances at the time of the defense, which are discussed earlier in this Memorandum. This crime was not motivated by greed, and since the time of the offense, Ms. Ringo has not only gained stable employment, but has also thrived in her career, furthered her education to advance her career, moved to get away from the crowd involved in this crime, provided guidance and a good home to her children, and complied with pretrial services requirements. No goal of sentencing would be furthered by her incarceration.

In this case, probation is allowed by the guidelines, and a variance from the guidelines, if any is deemed necessary for this sentence, is minimal. The factors set forth in *Gall* support a sentence of probation.

B. To protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational medical care, or other correctional treatment in the most effective manner. § 3553(a)(2)(C) and (D)

Ms. Ringo has a significant, but not serious or violent, criminal history. Her crimes are those of a person struggling with poverty and alcohol, and failing to cope with that stress in an appropriate manner. The most serious of her offenses occurred over ten years ago. This demonstrates that Ms. Ringo's advancement in her life, education, and career had enabled her to make better choices, and not act out of desperation. However, Ms. Ringo had never in her life sought mental health treatment for the traumas she suffered in her childhood and as a young adult. The poverty and stress engendered by the loss of her job and increased family responsibility were significant factors in her choice to commit this crime.

After the commission of this offense, and at the direction of pretrial services, Ms. Ringo obtained mental health treatment for the first time in her life. Ms. Ringo had never once talked to anyone about any of the incidents described in the PSR and this Memorandum. She had never

had the opportunity to reflect on how her past affected her in the present day, or how she had internalized much of the abuse she had suffered. Counsel for Ms. Ringo spoke with her mental health counselor, who described Ms. Ringo as someone who has an overwhelming need to provide for her children, because she does not want for them to experience what she experienced as a child. She also has concerns that Ms. Ringo could suffer severe mental health consequences if she is incarcerated, because providing for her children is such a central component of her mental stability, and incarceration would take this away from her. She also stated that Ms. Ringo is committed to the counseling sessions, and is gaining insight into her own behavior and mental health as a result.

Ms. Ringo herself reports that she is not only willing to continue counseling, but desires to so do, and that she looks forward to the sessions. She is receiving basic mental health counseling, grief counseling for the recent loss of her cousin, and help with parenting. PSR at ¶ 67.

The most important thing in preventing recidivism for this defendant is ensuring that she receive ongoing mental health counseling, so that she can continue to stabilize her life, and to cope with the many challenges that she faces, even on a day to day basis. Ms. Ringo will not receive this in the Bureau of Prisons. Moreover, incarceration will result in her losing her job, and potentially her children and housing. Incarcerating Ms. Ringo will cause chaos in her life. Because there is no rationale supported in the guidelines for such an outcome, probation is the reasonable sentence in this matter.

C. Harm to minor children that would be cause by imprisonment of the defendant is an appropriate sentencing factor under § 3553(a).

The Ninth Circuit has applied a post-*Booker* analysis to the situation presented in this case: that incarceration of the defendant could have serious negative consequences for a child. *United States v. Menyweather*, 447 F.3d 625, 633-634 (9th Cir. 2005), *overruled on other grounds*, *U.S. v. Munoz-Camarena*, 621 F.3d 967, 970 (9th Cir. 2010); *see also, U.S. v Whitehead,* 532 F. 3d 991 (9th Cir. 2008) (affirming sentence of probation for fraud resulting in loss of over one million dollars).

> In the "broader appraisal," available to district courts after *Booker*, courts can justify consideration of family responsibilities, an aspect of the defendant's "history and characteristics," 18 U.S.C. § 3553(a)(1), for reasons extending beyond the Guidelines. "District courts now . . . have the discretion to weigh a multitude of mitigating and aggravating factors that existed at the time of mandatory Guidelines sentencing, but were deemed 'not ordinarily relevant,' such as age, education and vocational skills, mental and emotional conditions, employment record, and family ties and responsibilities." *United States v. Ameline*, 409 F.3d 1073, 1093 (9th Cir. 2005) (en banc) (Wardlaw, J., concurring in part and dissenting in part) (emphasis added). The difficulty of providing appropriate care for a child of a single parent may, when balanced against factors such as the nature of the offense, § 3553(a)(1), deterrence to criminal conduct, § 3553(a)(2)(B), and protection of the public, § 3553(a)(2)(C), warrant a sentence outside the Guidelines.

*United States v. Menyweather*, 447 F.3d 625, 634 (9th Cir. 2006).

In *Menyweather,* the defendant had embezzled up to $500,000.00 with a sentencing range of 21 to 27 months imprisonment. The court departed eight levels, and sentenced the defendant to probation, with a condition that she serve forty days of weekend incarceration. The Court considered the fact that the defendant's child's father had been murdered, creating a unique relationship between the defendant and her child, and that no one else could provide appropriate care for the child. *Id.* at 628. In this case, Ms. Ringo has a similar relationship with her

daughter, and she has been the only parent to her sister's daughters as well. Furthermore, her crime is substantially less serious than the crime in *Menyweather.*

If Ms. Ringo is incarcerated, there is no one in her family who will provide support for her children. She has a strong bond with her children and is the only parent they have. Ms. Ringo is the person who the family turns to when children need a place to go. Her children will be placed in foster care if she is incarcerated. Ms. Ringo's love and support of her children is manifested in their success at school. Ms. Ringo will also lose her housing voucher, which saved her from homelessness over ten years ago. PSR at ¶ 59. She and her family will face housing instability and likely homelessness if this occurs. This would cause great harm to Ms. Ringo and her children. In this case, where no other parents or relatives would care for these children, and great detriment would occur to them if they were to lose their mother, the Court should weigh this factor heavily in favor of a sentence of probation.

D. Early acceptance of responsibility and remorse demonstrate a respect for the law and understanding of the seriousness of the offense. § 3553(a)(2)(a)

Ms. Ringo has acknowledged that what she did was wrong. Ms. Ringo, through counsel, promptly began to discuss settlement options with the government, and an agreement to the terms was reached quickly.

As evidenced by her statements to the U.S. Probation Officer and early agreement to admit guilt in this matter, Ms. Ringo readily accepts responsibility for her actions. She is remorseful and ashamed that she committed this crime, and she is ashamed that she has put her children in this position. Because of her acts, Ms. Ringo has spent the last several months in therapy, reflecting on her life, and knowing that she may lose everything because of her acts, but

she is also learning how to better cope in the future. However, she is determined to put her life back on a positive and productive course, which is leading a law-abiding life, with work and family at its center. This Court can be assured Ms. Ringo has been deterred from committing any further criminal acts, that she understands the seriousness of her acts, and that she respects the law. Probation, which is authorized by the guidelines, is an appropriate sentence.

**CONCLUSION**

Based on the above, the defendant respectfully requests that this Court sentence her, as indicated in the Probation Officer's Sentencing Recommendation, to three years of probation, waiver of the fine, a Special Assessment of $100.00, and Restitution in the amount of $403.88. Ms. Ringo requests that the fine be waived based on her inability to pay and the Sentencing Recommendation.

Dated: November 13, 2013

Respectfully Submitted,

/s/

SEVERA KEITH
CSBN: 218167
Attorney for Defendant
179 11th Street, 2nd Floor
San Francisco, CA 94103
(415) 626-6000
severakeith@gmail.com